Eliza J. Taft *vs.* Lewis H. Smith, executor.

Franklin.    January 26, 1904. — May 20, 1904.

Present: Knowlton, C. J., Lathrop, Barker, Hammond, & Braley, JJ.

*Trust*, Sound discretion of trustee as to investments, Negligence of trustee.

There may be circumstances under which an investment in a second mortgage by a
trustee is not inconsistent with sound discretion.

A trust small in amount consisted principally of a farm.  For the purpose of the
trust it became necessary that the farm should be sold and the Probate Court
authorized its sale.  The trustee sold the farm subject to a first mortgage of
$1,300 at a valuation of $4,300 including the first mortgage.  The purchaser
assumed the first mortgage, paid $1,000 in cash, and gave his note for the bal-
ance of $2,000 payable in annual sums of $200 each, secured by a second mort-
gage on the property.  The farm was on the main street of a town and there
was no reason to anticipate its decrease in value.  By the terms of the trust
such portion of the principal as might be necessary might be expended for the
support of the *cestui que trust* for life.  The purchaser of the farm became insol-
vent and a sale of the property under the second mortgage, subject to the first
mortgage, produced only $800.  In a suit against the executor of the trustee
for an accounting, it was *held*, that the court could not say that, under the
circumstances then existing and acting in the light which he had, the trustee
did not exercise a sound discretion in making the loan secured by the second
mortgage.

A trustee, holding the mortgage and note of an insolvent debtor, by agreement
with the assignee of the insolvent sold the property, indorsed the amount of the
proceeds on the note and filed a claim for the balance against the estate of the
debtor in insolvency.  The Court of Insolvency rejected the claim for the bal-
ance because the sale had been made without the assent of that court.  It did
not appear that the assignee had any property in his hands belonging to the
estate of the insolvent.  In a suit against the executor of the trustee for an
accounting, it was *held*, that it did not appear that any loss was suffered by the
trust from the failure of the trustee to obtain the assent of the Court of Insol-
vency to the sale.

Bill in equity, filed March 2, 1903, for an accounting for
certain property alleged to have been held in trust for the plain-
tiff by the defendant's testator.

The defendant demurred to the bill.  The Superior Court
overruled the demurrer, and the defendant appealed.  The case
was referred to a master who made a report, to which the plain-
tiff waived all exceptions and the defendant all exceptions save
one.  After the master made his report the defendant filed a
motion to dismiss the bill which was denied.  The case was sub-

mitted to *Aiken*, J. on the master's report and the one exception of the defendant thereto. The judge ordered, *pro forma*, that the bill be dismissed, and at the request of the parties reported the case for determination by this court. If the order of the judge that the bill be dismissed was right, a decree was to be entered accordingly; otherwise such decree was to be entered as justice and equity might require.

*B. H. Winn*, (*F. J. Lawler* with him,) for the defendant.

*H. J. Field*, (*A. D. Flower* with him,) for the plaintiff.

HAMMOND, J. All exceptions to the form of the proceedings having been waived by the defendant, the case is before us on the master's report; and the first question arising on the merits is whether the investment in the second mortgage was improper. It has long been the rule in this Commonwealth that in making investments, as well as in the general management of the trust, a trustee is held only to good faith and sound discretion, and hence that he cannot be held for the consequences of an error in judgment unless the error is such as to show either that he acted in bad faith or failed to exercise sound discretion. *Harvard College* v. *Amory*, 9 Pick. 446. *Pine* v. *White*, 175 Mass. 585, 590. The master having found that the trustee acted in good faith, the real question upon this branch of the case is whether he failed to use sound discretion.

Of course this question should be determined with reference to the situation at the time the investment was made, and not in the light of such subsequent events as could not have been reasonably anticipated. The trust fund was small, and not only the income, but such portion of the principal as might be necessary, might be expended for the support of the *cestuis que trust* for life; and it seems quite apparent from the master's report that at the time of the sale of the real estate the personal property in the trust had been exhausted and that good management required that the real estate should be sold for the purpose in part of paying outstanding claims for which the trust fund was ultimately liable. The real estate consisted chiefly of a farm subject to a mortgage to the amount of $1,300. By authority of the Probate Court the property was sold to one Martin, at a valuation of $4,300, including the first mortgage. This left $3,000 due to the trust; and Martin paid $1,000 in cash and in pay-

ment of the balance gave his note for $2,000, payable in annual sums of $100 each, with interest at the rate of seven per cent per annum, secured by a second mortgage on the property. Martin also assumed and agreed to pay the first mortgage. The trustee was a farmer, having owned and occupied for many years a farm which was situated about a mile distant from the farm mentioned above, both being on the same road. He was one of the selectmen of the town and had settled several estates. From the glimpses we get of him he evidently was a sturdy New England yeoman of the best type. By the sale he had received $1,000 in cash, and had as security for the balance of the purchase money of $2,000, what he had just sold for $3,000 to a *bona fide* purchaser, who, we infer, bought the farm for the purpose of occupying it himself as a farmer. The trustee was familiar with the farm and its value for farming purposes. It is true that his security was subject to a prior mortgage, but he might well have thought that in view of its size, whether absolute or relative, there was nothing to be feared from that. In this he seems to have been right, for the trouble in this case is due in no respect to the existence of the first mortgage. The farm was not on some lonely, unfrequented road, but was on the main street in the town. So far as appears the trustee had no reason to anticipate that the value of the property would decrease to any appreciable extent, much less to the extraordinary degree of fifty per cent in seven years. Moreover the mortgage provided for the annual payment of $100 a year on the principal. It is to be noted also that the depreciation does not seem to have been due to any mismanagement of this particular farm, but to general causes applicable to the whole neighborhood and not foreseen at the time of the sale. We are aware that in several cases in other States it has been stated that a trustee should not invest in second mortgages. While we accept that as a principle generally to be applied, we cannot accept it as an absolute, ironclad rule. After all, the true rule is whether under the circumstances sound discretion was exercised, and it cannot be said that under every conceivable practical set of circumstances an investment in a second mortgage is inconsistent with sound discretion. In view of the nature and size of the trust, taken in connection with the provision that from time to time

some portion of the principal might be expended as required for the support of the *cestuis que trust* for life, and in view also of the small size of the first mortgage, either absolute or relative to the value of the whole estate, of the character and size of the farm, and of the improbability that its value would so far depreciate as to result in loss on the mortgage, we cannot say that, acting in the light which he had, the trustee did not exercise sound discretion in making the loan. Nor did he violate the terms of his license.

The next question is whether the trust fund is shown to have suffered any loss by the manner in which the trustee undertook to realize upon the note and mortgage of Martin at the time of the insolvency of the latter. It appears from the report of the master that the trustee and the assignee of Martin's estate agreed to join in making a sale of the land subject to the first mortgage, the proceeds of the sale to be indorsed on the note. The land was accordingly sold for the sum of $800, which sum was indorsed upon the note, and then the trustee undertook to prove against Martin's estate in insolvency the balance due, amounting to $1,261.29. The assignee made no objection, but on the objection of Martin, the debtor, the court rejected the claim on the ground that the sale not having been made under the supervision of the court the right to prove against the estate for the balance due was lost. Gen. Sts. c. 118, § 27. See *Smith* v. *Warner*, 133 Mass. 71. As to this matter, it is found by the master that the trustee acted in good faith, and that it did not appear that the assignee had any property in his hands belonging to the estate of Martin. Under these circumstances, even if it be assumed that the trustee, although acting in good faith, could not successfully plead his ignorance of the law as a justifiable excuse (*Pierce* v. *Prescott*, 128 Mass. 140), it is not shown that the estate suffered by the loss of the right to prove the balance of the note. No loss being shown by this act, there is no occasion to consider it further.

The result to which we have come upon these questions renders it unnecessary to pass upon the validity of the conveyances of his private property made by the trustee to the defendant as set out in the bill.

*Bill dismissed.*