ADIN THAYER, Judge of Probate, *vs.* JOSEPH KINSEY.

Worcester.     October 2, 1894. — October 18, 1894.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Executor and Administrator — Investment by Executor — Effect of Subsequent Acts of Administrator de bonis non.*

An executor, acting in good faith, bought with the funds of the estate in his hands shares of stock in a corporation, of which he was an officer and the principal stockholder; and the only persons interested in the estate approved the purchase. He resigned his trust, and, in settlement with the administrator *de bonis non* of the estate, turned over to him a certificate for the shares so bought. The administrator accepted the same without protest, and for a long time after such transfer, and while he retained the shares and received dividends thereon and voted by proxy at the stockholders' meetings, the stock was worth as much as the amount of the trust funds invested therein, or more, and, if he had declined to receive the shares, or had within a reasonable time retransferred or redelivered the same to the executor, the latter could have sold them for an amount at least equal to their cost. The administrator retained the stock until,

---

for causes for which the executor was not responsible, it became worthless. *Held*, in an action on the executor's bond, that he was entitled to be credited with the sum invested in the stock.

CONTRACT, on a bond in the usual form, given by the defendant as principal and two other persons as sureties, conditioned, among other things, that the defendant, who had been appointed executor of the will of Henry C. Ammidown, should administer the estate according to law, and render an account. The breaches alleged were that the defendant had not administered the estate according to law, and had failed to account.

The case was referred to an auditor, who found that in January, 1884, the defendant, out of the funds of the estate in his hands, bought sixty-three shares of the stock of Post and Company, an Ohio corporation, paying therefor $6930 ; that, at the time of such purchase, he was an officer and the principal stockholder in the corporation; that he made certain representations in relation to the corporation to the widow of the deceased before the purchase; that the widow and the daughter of the deceased, who were the only persons interested in the estate, approved the purchase; that the defendant did not disclose to them that he was the principal stockholder in the corporation, nor that the money was then in the corporation's hands, loaned to it, nor that the business depended on his own activity and health, nor that he had bought of himself or his wife the sixty-three shares he so conveyed to the estate, nor that, under the law of Ohio, a stockholder in Post and Company was liable to the amount of the par value of the stock held for debts of the corporation, which could be enforced against him as trustee, and which might consume the whole remainder of the trust estate; that the defendant, upon his resignation as executor in 1886, in settlement with the administratrix *de bonis non*, turned over to her a certificate for the sixty-three shares of stock; and that the defendant was indebted to the estate in a sum named, which included the amount so paid for the stock.

Hearing before *Barker*, J., who reported the case for the determination of the full court, in substance as follows.

The defendant resigned his trust as executor of the will of Henry C. Ammidown in 1886, and Mary T. Ammidown, the

latter's widow, was appointed administratrix *de bonis non*, with the will annexed.

On April 6, 1886, the administratrix received, among other things, a certificate of sixty-three shares of Post and Company stock. The principal question was whether, in determining the amount for which execution should issue against the defendant, a credit should be given for the whole or for any part of the amount invested by him in the purchase of said sixty-three shares of stock; the defendant contending that the whole amount so invested should be credited, and the plaintiff contending that no credit should be allowed therefor.

In addition to the facts stated in the auditor's report, and bearing upon this question, the judge found that, in making the investment of $6930 of the funds of the estate in said sixty-three shares of stock, and in transferring the shares to the administratrix *de bonis non*, upon resigning his trust, and in all other matters and things concerning his trust as executor, the defendant acted in good faith and with honest intentions, and that he never intentionally deceived or withheld information from either of the persons interested in the estate; that Mary T. Ammidown was a relative of the family of the defendant, and she had visited in Cincinnati, Ohio, and had there had means of knowledge as to the business and standing of the Post and Company corporation, and that, in assenting to the purchase of the sixty-three shares of stock, she did not act solely upon the representations of the defendant; that for a long time after she had, as administratrix, received the transfer of said stock, and while she retained the same, and received dividends thereon, and voted by proxy at the stockholders' meetings, the stock was worth as much as, or more than, the amount of the trust funds invested therein, and might have been readily sold for at least that amount, and, if she had declined to receive the same, or had within a reasonable time retransferred or redelivered the shares to the defendant, he could have sold the same for an amount at least equal to $6930; that she did not place the stock within the control of the defendant, but herself retained the same until, from causes for which he was not responsible, it became of no value; and that, while there was a liability upon the holders of the stock for the debts of the corporation, those debts

have been paid, and were never a source of real danger to the administratrix or to the funds in her hands.

*H. H. Buck*, for the plaintiff.

*J. M. Cochran*, for the defendant.

ALLEN, J. When Mrs. Ammidown, as administratrix *de bonis non*, received the transfer of the sixty-three shares of Post and Company stock, she was the sole representative of the estate, and as such it was her province and duty to collect and receive the assets remaining unadministered from the original executor. *Wiggin* v. *Swett*, 6 Met. 194. *Newcomb* v. *Williams*, 9 Met. 525, 538, 539. *Fay* v. *Muzzey*, 13 Gray, 53. *Browne* v. *Doolittle*, 151 Mass. 595, 600. *Foster* v. *Bailey*, 157 Mass. 160. Being the representative of the estate, she might give a release, submit a claim to arbitration, or make a compromise. She had the same power, with respect to estate left unadministered, as the original executor. Wms. Ex. (6th Am. ed.) 961. *Bean* v. *Farnam*, 6 Pick. 269. *Chadbourn* v. *Chadbourn*, 9 Allen, 173. *Blake* v. *Ward*, 137 Mass. 94. It was within her power, if she saw fit to do so, to have an accounting with the original executor, and to settle with him.

We may assume that the investment in Post and Company stock was one which the court would not sanction, and for which the executor would be held personally responsible in case of loss. The auditor finds that, in settlement with the administratrix *de bonis non*, the executor turned over to her a certificate for the sixty-three shares. The justice who heard the case finds, in addition, that for a long time after she received this transfer, and while she retained the same and received dividends thereon, and voted by proxy at the stockholders' meetings, the stock was worth as much as, or more than, the amount of trust funds invested therein, and might readily have been sold for at least that amount; and that if she had declined to receive the same, or had within a reasonable time retransferred or redelivered the same to the former executor, he could have sold the same for an amount at least equal to the cost thereof. But she retained the same.

There appears to be no reason to doubt that he made this transfer to her as and for an asset of the estate in which he had properly invested the funds of the estate, or at any rate as an

asset which was then worth what it had cost. If she entertained a different opinion, she might have protested that in receiving the shares she would take them for only so much as they were then worth, or she might have declined to receive them at all, and looked to his bond. *Burgess* v. *Keyes,* 108. Mass. 43, 45. But she did nothing of the kind. She took the shares without protest or objection, and kept them for a long time, and in point of fact they were worth their full cost. She accepted them. She did not make it known that she took them on any other terms than those upon which they were offered to her. At least she must be held to have taken them as and for as much as they were worth. Whether by her acceptance of the shares without objection she is precluded from afterwards saying that she took them on different terms from those upon which they were offered, or whether she, by taking them, became bound to give credit to him for their actual value at the time, or at such time as she by reasonable diligence could have disposed of them, in either case the result is the same.

Upon the report, the executor is entitled to be credited with the sum of $6930, invested in the shares. No other question, as we understand the report, is presented for our decision.

*So ordered.*

