BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.*
ESTHER M. HAYWARD & others.

Norfolk. November 10, 13, 1939. — March 28, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, & RONAN, JJ.

*Trust*, Investments, Sale of property by trustee.

A proposed sale by a trustee under a will, giving him full discretionary power in the circumstances, of shares of stock in six closely affiliated textile corporations, whose stock was owned by a small group and

generally had no outside market and with five of which the testator had been closely connected in a managerial capacity, rightly was authorized by the Probate Court upon findings that it was expedient, most for the interest of all concerned in the trust, and fair and reasonable, although the sale was for about two thirds cash and somewhat more than one third unsecured time notes of the corporations, the shares comprising nearly eighty per cent of the estate and the testator in his will having urged an early disposal of such investment and reinvestment of the proceeds, and there being no evidence that a more advantageous offer had been or was likely to be secured by the trustee.

PETITION, filed in the Probate Court for the county of Norfolk on December 7, 1938.

From a decree for the petitioner, entered after a hearing by *McCoole*, J., respondents appealed. The evidence was reported.

*W. H. Lewis*, (*J. H. Burke, Jr.*, with him,) for the respondents Esther M. Hayward and others.

*D. W. Corcoran*, guardian *ad litem*, submitted a brief.

*C. M. Rogerson*, (*R. W. Hardy* with him,) for the petitioner.

RONAN, J. This is a petition, filed by the trustee under the will of William L. Hayward, for leave to sell shares of the capital stock of four textile companies and a promissory note of one of these companies for $614,205, of which $400,-000 is to be paid in cash and the balance, $214,205, by promissory notes bearing interest and payable in or within five years. The widow, who has a three-ninths interest for life in the trust, and the guardian of the three minor children, each of whom has a two-ninths interest, appealed from a final decree authorizing the sale of the trust property.

The testator for many years prior to his death on December 4, 1937, was actively engaged in the management of five corporations manufacturing various textile products and also in a corporation which was the sales agency for these mills. One of the corporations was entirely owned by three of said corporations, while all the capital stock in the sales company was held by some of these other corporations. In addition, some of the four mills owned shares of stock in the others. All the companies were "closed corporations" in that the stock is owned by a small group and generally

speaking has no outside market. Some of the mills have been in operation for many years and appeared to have acquired a good reputation in the textile industry. At the time of his death, the testator was president of each of these six companies and Winfield A. Schuster was treasurer. This group of companies had been operated profitably, and during the last five years ending on November 30, 1937, the average net yearly earnings were $231,310. The testator appears to have been thoroughly familiar with the textile industry and with the nature of his investments in these companies. The will contained this instruction to his trustee: "At the present time a substantial portion of my estate consists of stocks in business corporations in the active management of which I am engaged, and such is very likely to be the situation at the time of my death, and I appreciate that it might not be practical to liquidate such investments immediately, though they do not constitute suitable trust investments under ordinary conditions. It is my will and desire that my trustees, in the exercise of the discretion herein given to them, dispose of such investments as soon as in their judgment can be done without undue loss, and re-invest the proceeds in suitable trust investments. It is further my desire that the trustees, as soon as reasonably may be, convert the property which they may receive as trustees so as to establish a conservative trust estate, and that they keep the estate invested in such manner as, in accordance with their best judgment, will preserve the principal thereof."

Schuster on November 28, 1938, offered to purchase from the trustee all the shares of stock held by the trustee in these four companies, and also a note of $50,000, held by the trust, which was issued by one of these companies. Schuster agreed to cause three of the companies to purchase a certain amount of the trust stock and the note of $50,000 for $140,000 in cash, and notes in the amount of $214,205; and Schuster agreed to purchase the remaining stock and to pay $260,000. In other words, the trustee was to receive $400,000 in cash and three notes, one from each of the corporations in various amounts, totaling $214,205. Each of these three corpora-

tion notes was to bear interest at the rate of four and one half per cent payable semiannually and to mature in or within five years at the option of the maker. The maker was to agree not to declare any dividends except stock dividends nor to acquire any stock except in exchange for any stock issued by it, unless it should make a payment on account of the principal of said note equal to twenty-five per cent of the amount of such dividend or the cost of acquiring said stock; and it was to agree to pay on February 1 of each year on account of the principal of said note a sum equal to twenty-five per cent of the net earnings available for dividends for the preceding fiscal year or twenty per cent of the original principal amount of the note, whichever should be less, provided such payment should not exceed a sum that would reduce the net current assets at the close of the preceding year below two hundred per cent of the current liabilities.

The trustee although authorized by the will to sell the trust property could, under G. L. (Ter. Ed.) c. 203, § 16, secure leave to sell if it proved that the proposed sale was necessary or expedient and that it would be advantageous to the beneficiaries. *Tifft* v. *Ireland*, 273 Mass. 56. *Gleason* v. *Hastings*, 278 Mass. 409. The judge made no report of the material facts. The decree, however, contains certain findings of fact to the effect that the "said sale, conveyance and transfer are necessary, expedient for the reason that the will requires the disposal of said personal estate by the petitioners as soon as can be done without undue loss, and is most for the interest of all concerned in said trust." It is the duty of this court to examine all the evidence and to decide the case upon its own judgment, giving proper consideration to the findings of the judge which are not to be set aside unless plainly wrong. *Tuells* v. *Flint*, 283 Mass. 106. *Knowles* v. *Newhall*, 303 Mass. 385.

This group of textile companies has been in operation for a great many years. The value of the various manufacturing plants and their equipment was set forth in the testimony. The financial condition of the companies for a number of years was disclosed in numerous audits and by the report of a textile engineer. There was considerable evidence

by various witnesses, all of whom could properly be found by the judge to be qualified to express an opinion, that the value of the stock held by the trustee was somewhat less than the amount of the offer after deducting $50,000 — the amount of the promissory note issued by one of these companies. Some of the valuations were based upon the net quick assets of the companies, with little, if any, attention given to the buildings, land, equipment and good will. Others seem to indicate an opinion in case the companies ceased operation and liquidated their affairs. Yet there was sufficient evidence of the fair market value of the trust property and we cannot say that the judge was wrong in his finding, implied in granting the petition, that the offer was fair and reasonable. The entire trust property was appraised for $847,137.80 as shown by the inventories filed in the Probate Court, and this included the property that the trustee seeks to sell which was appraised at $683,014.04. The testator had for many years been engaged in the active management of the business. He apparently knew the skill and ability required to operate successfully the companies, the fluctuations ordinarily experienced in the conduct of the business, and the. general financial and economic conditions prevailing in the textile industry. He seems to have appreciated that his holdings in these companies would "not constitute suitable trust investments under ordinary conditions" and desired that they be sold as soon as a sale could be had without undue loss to his estate. One of the terms of the trust was that the sale of the stock in these textile companies was to take place as soon as it could be accomplished without undue loss, and the trustee was bound to carry out this expressed intention of the testator. *Bartlett* v. *Slater*, 211 Mass. 334. *Old Colony Trust Co.* v. *Shaw*, 261 Mass. 158. *Anderson* v. *Bean*, 272 Mass. 432. *North Adams National Bank* v. *Curtiss*, 278 Mass. 471. *First National Bank of Boston* v. *Truesdale Hospital*, 288 Mass. 35.

The appellants contend that the will did not authorize the trustee to sell upon credit, and that the court erred in authorizing a sale where $214,205 of the purchase price is to be paid by the unsecured notes of three of the corpora-

tions. Doubtless, the lending of trust funds upon the personal credit of the borrower would be an improper investment. *Harding* v. *Larned*, 4 Allen, 426. *Clark* v. *Garfield*, 8 Allen, 427. *Brigham* v. *Morgan*, 185 Mass. 27, 39. Am. Law Inst. Restatement: Trusts, § 227 (i).

The trustee is not seeking to make an investment but is seeking leave to terminate an investment made by the testator, which the judge could find, upon the evidence and in accordance with the declaration of the testator expressed in his will, was not suitable to be held in a trust fund; the judge could further find that there was no available market for the stock and that it was expedient to accept and carry out the terms of the offer. Here nearly eighty per cent of a large trust depended entirely upon the successful operation of six companies so closely affiliated that they really formed a single enterprise. The advisability of freeing the trust from such a risk might well be given serious consideration. Upon the testimony, and especially in view of the absence of any evidence that an offer more advantageous than that submitted by Schuster had been or was likely to be secured by the trustee, we cannot say that the judge was plainly wrong in finding that a sale was necessary and that it was expedient to accept the offer of Schuster. It could be found that the acceptance of the notes in these circumstances would not be inconsistent with the exercise of good faith and sound judgment by the trustee, and that the termination of this investment in these mill corporations would prove to be advantageous to the beneficiaries even if for the present they may not be able to receive as much income as they have from the dividends from the mills. Such a result would not be inconsistent with the directions of the testator that the stock in these corporations should be converted into a conservative trust estate, and that the trust estate should be kept invested in such a manner as would preserve the principal of the trust. *Taft* v. *Smith*, 186 Mass. 31. *Malden Trust Co.* v. *Brooks*, 291 Mass. 273, 289, 290. *Costello* v. *Costello*, 209 N. Y. 252. Scott, Trusts, § 190.7.

The testator's son, who was twenty years of age and who

opposed, through his guardian, the granting of the petition, was not permitted to testify, in answer to a question whether he desired a sale of the stock, that both his mother and himself did not desire to have the stock sold. The wish of a beneficiary that is not consistent with the terms of the will creating the trust in his favor has been said to be no reason why a sale that could be found to be in conformity to the directions of the testator should not be effected. *Bartlett* v. *Slater*, 211 Mass. 334.

Costs as between solicitor and client are to be in the discretion of the Probate Court.

*Decree affirmed.*